1
2
3
4                    UNITED STATES DISTRICT COURT
5                        DISTRICT OF NEVADA
6                               * * *
7    EDWARD BROWN,                          Case No. 2:22-CV-1186 JCM (NJK)
8                          Plaintiff(s),                ORDER
9         v.
10   CHICAGO TITLE INSURANCE
     COMPANY, et al.,
11
12                        Defendant(s).
13

14        Presently before the court is plaintiff Edward Brown's ("plaintiff") motion to remand.

15   (ECF No. 8).  Defendant Chicago Title Insurance Company ("Chicago Title") filed a response.

16   (ECF No. 11).  Plaintiff replied (ECF No. 13).

17        Also before the court is Chicago Title's request for judicial notice.[1] (ECF No. 12).

18   **I.    Background**

19        The instant action is one of many title insurance suits currently pending in Nevada courts.

20   Plaintiff is the alleged beneficiary of the deed of trust encumbering property located at 9338

21   Wilderness Glen Avenue, Las Vegas, Nevada 89178 (the "property") and brings this action against

22   Chicago Title and Chicago Title Agency of Nevada ("Chicago Agency") (collectively

23   "defendants") pursuant to a title insurance policy dispute.

24        Non-party borrowers purchased the property in 2005 and, to secure a loan, executed a deed

25   of trust naming their lender, Bank of America, N.A. ("BANA"), as the beneficiary.  BANA entered

26
27
28

[1] Chicago Title's request is GRANTED.  The court takes judicial notice of the offered record as a matter of public record.

**James C. Mahan**
**U.S. District Judge**

1    a contract with Chicago Title to insure the deed of trust over competing liens (the "policy").[2]  In

2    2014, the deed of trust—including the benefits of the policy—was assigned to Wilmington Savings

3    Fund Society ("Wilmington").  The non-party borrowers eventually failed to pay Homeowners

4    Association ("HOA") fees, and the HOA executed a nonjudicial foreclosure on the property in

5    2016.  The property was sold to Saticoy Bay LLC Series (the "buyer").

6         Wilmington subsequently filed a quiet title against the buyer to which the buyer filed an

7    answer and counterclaim, asserting its interest was superior to that of the deed of trust.  Wilmington

8    filed a claim with Chicago Title requesting legal defense and indemnification under the policy.

9    Chicago Title denied the claim, and Wilmington assigned the deed of trust—again, including the

10   benefits of the insurance policy—to plaintiff.

11        Plaintiff then filed the instant litigation in Nevada state court on July 22, 2022.  (ECF No.

12   1-1 at 35).  Chicago Title removed the action to this court two days later before any defendant was

13   served.  (ECF No. 1).

14   **II.    Legal Standard**

15        A defendant can remove any civil action over which the district court has original

16   jurisdiction.  28 U.S.C. § 1441(a).  Yet federal courts are courts of limited jurisdiction.  *Owen*

17   *Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  That is why there is a strong

18   presumption against removal jurisdiction.  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th

19   Cir. 2009).  The "burden of establishing federal jurisdiction is on the party seeking removal, and

20   the removal statute is strictly construed against removal jurisdiction."  *Prize Frize, Inc. v. Matrix*

21   *Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999).

22        A plaintiff can challenge removal with a motion to remand.  28 U.S.C. § 1447(c).  To avoid

23   remand, the removing defendant must show by a preponderance of the evidence that there is

24   complete diversity and that the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  The

25   court will resolve all ambiguities in favor of remand.  *Gaus v. Miles*, Inc., 980 F.2d 564, 566 (9th

26   Cir. 1992); *Hunter*, 582 F.3d at 1042.

27

28        [2] Chicago Title is the underwriter of the policy.  Whether Chicago Agency is also a party to the policy is disputed.  It is undisputed, however, that Chicago Agency played at least some role in the policy's existence.

James C. Mahan
U.S. District Judge

1    But even if the diversity jurisdiction requirements are met, a diversity case nonetheless

2    cannot be removed if "*any* of the parties in interest properly joined and served as defendants is a

3    citizen of the [s]tate in which such action is brought."  28 U.S.C. § 1441(b)(2) (emphasis added).

4    This is the forum defendant rule, a waivable procedural rule yet still one of the "more substantive

5    removal defects."  *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 936 (9th Cir. 2006).

6    **III.   Discussion**

7        A.  Fraudulent Joinder

8        The court disregards fraudulently joined defendants when determining if there is complete

9    diversity.  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  A joinder is

10   fraudulent if "the plaintiff fails to state a cause of action against a resident defendant, and the

11   failure is obvious according to the settled rules of the state."  *Id.* (quoting *McCabe v. General

12   Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).  If there is even a possibility that a Nevada

13   state court could find that the complaint states a claim for relief against the allegedly fraudulently

14   joined defendant, the court must remand the case.  *Hunter*, 582 F.3d at 1044–46.  "Fraudulent

15   joinder must be proven by clear and convincing evidence."  *Hamilton Materials, Inc. v. Dow Chem.

16   Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

17       Federal Rule of Civil Procedure 20 allows the permissive joinder of multiple defendants in

18   a single lawsuit when (1) a right to relief is asserted against each defendant that relates to or arises

19   out of the same transaction or occurrence or series of transactions or occurrences; and (2) some

20   question of law or fact common to all parties arises in the action.  Fed. R. Civ. P. 20(a)(2).  The

21   rule "is to be construed liberally in order to promote trial convenience and to expedite the final

22   determination of disputes, thereby preventing multiple lawsuits."  *League to Save Lake Tahoe v.

23   Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977).  "[T]he impulse is toward

24   entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of

25   claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am. v. Gibbs*, 383

26   U.S. 715, 724 (1966).

27

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    Plaintiff properly joined Chicago Agency in this suit.  The claims against defendants arise
2    out of the same series of transactions or occurrences and there are common questions of law or
3    fact.

4    The "same transaction prong" of Rule 20 "refers to the similarity in the factual background
5    of" the claims at issue.  *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  Claims are part
6    of the same transaction or occurrence if they "arise out of a systematic pattern of events."  *Id.* at 7.

7    Plaintiff's relevant causes of action for deceptive trade practices and unfair claims practices
8    assert that defendants acted in concert to make misrepresentations as well as deny coverage under
9    the title insurance policy.  Specifically, the claims posit that defendants presented public
10   descriptions of coverage that they knew were incorrect and that defendants failed to "adopt and
11   implement reasonable claims handling procedures to provide coverage" under the policy.  *See*
12   (ECF No. 1-1 at 32–33).  Thus, the "same transaction" prong of permissive joinder is met.  *See*
13   *Coughlin*, 130 F.3d at 1350.

14   Further, there are common questions of law or fact.  Plaintiff's claims present questions as
15   to, *inter alia*, whether specific insurance forms provided coverage and whether Chicago Title and
16   Chicago Agency wrongfully denied claims arising from the HOA sales.  These questions present
17   more than the "single question of law or fact" necessary to permit joinder.  *See Bank of Am. v.*
18   *Fidelity Nat'l Title Grp., Inc.*, No. 2:21-cv-00348-CDS-BNW, 2022 WL 2819847, at *6 (D. Nev.
19   July 18, 2022).

20   B.  Snap Removal

21   Because Chicago Agency is a properly joined forum defendant, the forum defendant rule
22   in 28 US.C. § 1441(b)(2) applies.  The court must now consider if Chicago Title's snap removal
23   was proper.

24   Snap removal is the tactic of removing a diversity case before a forum defendant has been
25   served.  The Second, Third, Fifth, and Sixth Circuits endorse the tactic,[3] but the Ninth has not
26   squarely addressed it.  Snap removal is performed against the backdrop of the forum defendant

---

27
28   [3] *See Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 701 (2d Cir. 2019); *Encompass Ins. Co.*
     *v. Stone Mansion Rest. Inc.*, 902 F.3d 147 (3d Cir. 2018); *Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*,
     955 F.3d 482 (5th Cir. 2020); and *McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001).

James C. Mahan
U.S. District Judge

rule, which "is a procedural, or non-jurisdictional, rule." *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 936. Unlike jurisdictional rules, procedural rules may not be addressed *sua sponte* by the court. *Skranak v. Castenada*, 425 F.3d 1213, 1216 (9th Cir. 2005). The forum defendant rule's characterization as a procedural, rather than jurisdictional, rule has led to this new form of jurisdictional gamesmanship in litigation.[4]

Chicago Title relies on circuit cases outside the Ninth Circuit for its position, *see supra* n.2, and mentions Judge Navarro's position in this district allowing snap removal under a "plain reading" of § 1441(b)(2). *See MetLife Home Loans, LLC v. Fid. Nat'l Title Grp., Inc.*, Case No. 2:20-cv-017980-GMN-VCF, 2021 WL 4096540 at *4 (D. Nev. Sept. 8, 2021); (ECF No. 21 at 2, 6). Plaintiff contends that the Ninth Circuit has rejected snap removal, explaining "[a] nonresident defendant cannot remove a 'non-separable' action if the citizenship of any codefendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or nonservice upon the codefendant." *Preaseau v. Prudential Ins. Co. of Am.*, 591 F.2d 74, 79 (9th Cir. 1979) (quoting *Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969)); (ECF No. 8 at 6).[5]

This is not the court's first impression of snap removal. The court adopts its prior reasoning from *U.S. Bank Trustee*, *Wells Fargo Bank*, and *Carrington*.[6] *See U.S. Bank Trustee*, 2020 WL 7360680, *Wells Fargo Bank*, 2020 WL 5898779; *Carrington*, 2020 WL 3892786. In short, the word "any" in "any parties in interest properly joined and served" necessarily means "that the [removal] statute assumes *at least one party has been served*." *Carrington*, 2020 WL 3892786, at *3 (emphasis added) (citing *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316 (D. Mass. 2013)). And snap removal contravenes the removal statute's purpose of preserving a plaintiff's choice of a state court forum when suing a proper forum defendant. *Accord Wells Fargo Bank*,

---

[4] The ubiquity of electronic docketing has also contributed to the rise in snap removals. *See, e.g., Perez v. Forest Labs., Inc.*, 902 F. Supp. 2d 1238, 1243 (E.D. Mo. 2012) ("Pre-service removal by means of monitoring the electronic docket smacks more of forum shopping by a defendant, than it does of protecting the defendant from the improper joinder of a forum defendant that plaintiff has no intention of serving.") (emphasis added).

[5] *Preaseau* did not explicitly consider "snap removal;" it interpreted 28 U.S.C. § 1441(b) in the context of nondiverse doe defendants and timeliness.

[6] The court's reasoning has been endorsed by Judges Dorsey and Gordon. *See HSBC Bank USA, Nat'l Ass'n*, 2020 WL 7625233; *Wells Fargo Bank*, 2020 WL 7388621.

James C. Mahan
U.S. District Judge

1   2020 WL 7388621, at *4 ("The purposes underlying § 1441(b)(2) are better served by disallowing

2   removal before any defendant is served.").

3          Chicago Title asserts that this court errantly relied on *Gentile* to remand recent "snap"

4   removed cases because *Gentile* is inconsistent with a First Circuit ruling.  (ECF No. 23 at 2).  Even

5   assuming *arguendo* that this is true, the First Circuit's decisions are not binding on this court.

6          The court reiterates its prior reasoning that "Congress would not have wanted to stop

7   gamesmanship by plaintiffs by allowing gamesmanship by defendants."  *U.S. Bank Trustee,* 2020

8   WL 7360680, at *4.  To the extent there is ambiguity here—including uncertainty and unsettled

9   law in the Ninth Circuit—the court resolves the ambiguity in favor of remand.  *Gaus*, 980 F.2d at

10  566; *Hunter* 582 F.3d 1039.

11         Accordingly, because no defendant had been served prior to Chicago Title's removal, this

12  case must be remanded.

13  **IV.    Conclusion**

14         Accordingly,

15         IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion to

16  remand (ECF No. 8) be, and the same hereby is, GRANTED.

17         IT IS FURTHER ORDERED that the clerk shall REMAND this case back to the Eighth

18  Judicial District Court for Clark County, Nevada, and CLOSE this case.

19         DATED October 31, 2022.

20  _____

21  UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

James C. Mahan
U.S. District Judge

- 6 -